Madden, Judge,
delivered the opinion of the court:
The plaintiff partnership sues the Government for breach of contract. The plaintiff had a contract, dated July 17, 1951, to construct a large warehouse for the Navy at Cherry Point, North Carolina. In the course of the work, the soil conditions at the site were found to be much more stable than had been anticipated. In consequence, the numerous piles called for by the contract were greatly shortened, but the difficulties of placing them were increased. The amounts of excavation and fill were also reduced. The plaintiff claims that it was not equitably compensated for the difficulties and delays resulting from the changes in the piling, and that the measurement of the excavation and fill was not in accordance with the provisions of the contract.
Our findings show that on the basis of the evidence, and the lack of evidence, the plaintiff’s claims above described must be denied. Plaintiff has, however, another claim, called Claim B, which deserves discussion. It relates to the placing of a six-inch layer of crushed stone, covered by sisal paper, which the Government says, and the plaintiff denies, was required by the contract to be placed under the entire area of the concrete floor of the warehouse, an area approximately 800 feet long and 190 feet wide. The Government directed the plaintiff not to place the crushed stone and sisal paper, and reduced the contract price by $17,808.89 on account of the elimination. The plaintiff says that the contract never required it to place the crushed stone and sisal paper, and hence there was no elimination from the requirements of the contract and no reason to reduce the contract price.
The specifications of the contract made no mention whatever of the crushed stone fill and damp-proof paper. One *162 of the drawings, which had on it some sixteen separate detail sketches of various items in the construction of the warehouse, showed in one sketch a layer of six inches of crushed stone, in another, such a layer and sisal paper, and in another, lines indicating a layer below the concrete slab but not indicating what the contents of the layer would be.
The contract contained a provision that if there was a conflict between the drawings and the specifications, the specifications would govern; and another provision that anything shown either in the drawings or the specifications should be of like effect as if shown or mentioned in both.
The plaintiff urges that the indications on the drawings were a “draftsman’s error.” If they were, the Government had no right to deduct $17,000 from the plaintiff’s compensation because it directed the plaintiff not to incorporate the draftsman’s error in the construction, if, as we have found, the plaintiff added nothing to its bid on account of the notations on the drawings.
We must determine whether the Government representatives who prepared the contract documents intended that crushed stone and sisal paper should be placed under the concrete slab. When the question arose, the Board on Changes made this report and recommendation:
(g) Y&D Drawing No. 499888 shows 6 inches of crushed stone fill covered with vapor-proof paper, to be placed immediately under the concrete floor slab of the warehouse under the subject contract. This was designed as an insulating and damp-proofing layer between soil fill and floor slab. Since the floor of the warehouse is approximately 4 feet above the level of surrounding terrain, it was felt that this precaution was unnecessary, and a credit should be taken by the Government for deletion of this portion of the work.
The specifications and drawings had shown, from the time of the making of the contract, that the warehouse floor would be four feet above the level of the surrounding terrain. That being true, it would seem that it would have occurred to the architect who planned the building, just at is occurred to the Board on Changes, that it would be a waste of money to include a $17,000 damp-proofing installation under a concrete floor that was four feet above ground level. Neither *163 before the Board of Contract Appeals nor before this court did the Government present evidence that it was in fact the Government’s intent to require the crushed stone fill, nor even that it would have been reasonable planning to require it and pay for it.
The specifications were very definite about the preparation of the soil base under the concrete floor slab. There was to be a twelve-inch fill of earth compacted to a density of 95 percent. As we have said, no mention was made of any requirement of a layer of crushed stone between the compacted fill and the concrete floor.
If the mention of the crushed stone fill and sisal paper on the drawings made them a requirement of the contract, it left the requirement completely undefined so far as the size and quality of the stone, its degree of compaction and the manner of its placing were concerned. The same was true as to the weight and quality of the sisal paper. These elements, with regard to other similar construction items, for example, railroad ballast, and trench-back filling, were carefully covered by the specifications. In the consideration of this claim before the Armed Services Board of Contract Appeals, the parties were in controversy as to the amount of stone omitted, because there was no definition of the method or degree of its compaction, nor of the size of the stone. That Board, though it concluded that the notations on the drawings did constitute a requirement of the contract, was unable to determine the amount of the reduction which should flow from the elimination of the requirement. This was because it could not determine, from the evidence, what, in fact, the contract requirement was.
The foregoing items seem to us to strongly support the plaintiff’s contention that the notations on the drawing were draftsman’s errors. This inadvertence on the part of the Government was matched by the plaintiff’s inadvertence in failing to notice the notations on the drawing, and in consequence, its failure either to call the Government’s attention to the inconsistency, or to include in its bid any amount for the items noted on the drawings. In this situation, neither party can hold the other to a contract which neither intended to make, and the Government is not entitled to deduct from *164 the contract price the cost of work which, we have concluded, was not intended by the parties to be included in the contract. The plaintiff is entitled to a judgment for $17,808.89, less the sum of $319.42 previously paid plaintiff on this claim.
It is so ordered.
LittletoN, Judge {Bet.); Laramore, Judge; and Jones, Chief Judge, concur.